Wallace BONNEY and Doris Bonney, Plaintiffs,

v.

The UPJOHN COMPANY, a Delaware Corporation, Defendant.

No. K75–86 CA4.

United States District Court, W. D. Michigan, S. D.

March 27, 1980.

Harry Lieffers, Jr., Stephen C. Kail, Grand Rapids, Mich., for plaintiffs.

Wallson G. Knack, Grand Rapids, Mich., for defendant.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

Plaintiffs have sued The Upjohn Company, Inc., alleging personal injuries from ingesting Lincocin, an antibiotic drug manufactured by the defendant. Presently before the court is defendant's motion for summary judgment alleging plaintiffs' claims were not timely filed.

### 1. THE FACTS.

Plaintiff, Wallace Bonney, was injured in a work related accident in 1956 while employed with the H. L. Lockrow Co. He remained unemployed for about a year as a result of a spinal compression fracture and collected workmen's compensation. He la-ter returned to Lockrow and stayed with that firm until 1965, when he began to work for Mercury Building Maintenance in Grand Rapids, Michigan. In June 1970, Mr. Bonney quit work due to his poor health. His condition at that time forms the basis of this lawsuit.

In 1970, Mr. Bonney developed a bone degeneration in his jaw. Dental surgery was ineffective. In an effort to retard this condition, plaintiff's dentist prescribed Lincocin, a drug manufactured by the defendant and, according to plaintiffs, marketed as a radical antibiotic designed to curb infection and to retard disease and destruction caused by bacteria.

Mr. Bonney's reaction to Lincocin was severe. He suffered "all manner" of psychological and physical reactions to his body, including damage to his muscles, bones, nervous and vital organs, loss of appetite, diarrhea, weight loss, inability to digest food, disorientation, poor blood circulation and an inability to retain Vitamin D. The plaintiff nevertheless continued to ingest Lincocin for several weeks. In the meantime, he contacted physicians concerning his adverse symptoms. The B–12 shots and other remedies which were prescribed for him proved, however, to be ineffective.

Mr. Bonney thereafter contacted an attorney who advised him that because of his disability he should apply for workmen's compensation. At first he rejected this advice, but in 1974 he did apply for and receive compensation. The defendant does not contend that Mr. Bonney's attorney considered, in 1970, any claim against Upjohn.

In January of 1975, the plaintiff read an article in the Grand Rapids Press reporting the Food and Drug Administration's apparent concern over Lincocin's side effects. On February 25, 1975, approximately five years after first taking the drug, plaintiffs initiated this litigation and demanded a jury trial. Their complaint and amended complaint essentially charge the defendant, Upjohn Company, with negligence in failing to warn consumers of the potential damaging side effects associated with Lincocin; with

negligence in failing to appropriately research and test the product; and with breach of warranty of merchantability.

In a deposition taken on June 23, 1977, Mr. Bonney was questioned about his understanding of the relationship between his physical condition and the Upjohn antibiotic he had been taking. The following excerpts are taken from that deposition:

"Q So when you quit working for Mercury in June of 1970, it was because of your system was shot because of all these antibiotics you were taking?

A My poor health, yes.

Q And you made a determination that it was because of the antibiotics?

A Due to the information I had, and nothing else I could figure out, I took the assumption that that was the problem . . .

Q And it was your opinion at that time that your problems where you felt so bad that you couldn't work anymore was caused by one of the biotics—antibiotics, which was Lincocin?

A That was my feeling." At pp. 4–5.

"Q Now, you said that you didn't feel that your problem was related to work, you thought it was involved with something else. Was that the antibiotics?

A That was my opinion.

Q And did you discuss with any physicians in 1970 that it was your opinion that the Lincocin you'd been taking caused these problems of weakness you've described to me?

A Yes.

Q And with what physicians did you discuss that?

A Well, for instance, Dr. Schaubel. I was to him. And I was complaining about the way I felt, the situations, and—in the low part of my back, and he said, 'Well, my opinion is,—' he says, '—you're getting both barrels.' He said, 'You've got low back trouble, plus the antibiotics.' He said, 'The only think I can tell you to do is take it easy and take lots of Vitamin B and drink lots of liquid.'

Q So in your opinion, Dr. Schaubel confirmed your own opinion that the Lincocin was causing you to have these aches and pains?

A Yes, I believe so.

Q And when did you see Dr. Schaubel when he told you this?

A It would be in probably in July of '70.

Q Okay. Besides confirming with Dr. Schaubel that the Lincocin was causing your problems, did you use any other physicians to discuss this problem in 1970?

A Dr. Coretti. Said he couldn't find anything wrong with my back. He said could be the antibiotics is giving you trouble, but he didn't elaborate, he didn't go into any details." At pp. 11–12

"Q . . . you have just testified this afternoon that you first decided in your own mind Lincocin caused your problem back in 1970, is that correct?

A I suspected it.

Q Also that was confirmed, as you best recall, by Drs. Schaubel, Coretti and Lado in 1970?

A As I said, Dr. Schaubel said I was probably getting both barrels from the back trouble and from the antibiotics.

Q And the antibiotics you were taking were Lincocin at that time?

A Yes." At p. 25.

The defendant alleges that in light of this testimony, plaintiffs' lawsuit was initiated after the time permitted by the statute of limitations, which it claims began to run in 1970 when the plaintiff allegedly first deduced the causal connection between Mr. Bonney's illness and the drug he was taking.

## 2. DISCUSSION.

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), overruling

*Swift v. Tyson*, 16 Pet. 1, 10 L.Ed. 865 (1842), held that federal courts sitting in diversity cases, when deciding cases of "substantive" law, are bound by state court decisions as well as state statutes. See, *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Moreover, the Supreme Court noted, in *Moore v. Illinois Cent. R. Co.*, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941), that even before *Erie*, federal courts in diversity cases have applied state statutes of limitation in cases such as the present one. It is clear, therefore, that Michigan law applies to the case at hand.

The Michigan statute of limitations applicable to the present action, M.C.L.A. § 600.-5805; M.S.A. § 27A.5805, reads as follows:

"§ 27A.5805 *Limits on actions to recover damages for injuries to persons or property.* SEC. 5805. (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section . . .

(8) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

(9) The period of limitations is 3 years for a products liability action. However, in the case of a product which has been in use for not less than 10 years, the plaintiff, in proving a prima facie case, shall be required to do so without benefit of any presumption."

Under this section, plaintiffs have three years after "accrual" of their claims within which to bring suit, regardless of whether their claims are based on theories of personal injury or product liability.

As already noted, the plaintiffs' complaint rests essentially upon two grounds: breach of warranty and negligence. In Michigan, the time of "accrual" for a breach of warranty claim is set out in MCLA § 600.5833; MSA § 27A.5833, which reads as follows:

"SEC. 5833. In actions for damages based on breach of a warranty of quality or fitness the claim accrues at the time the breach of the warranty is discovered or reasonably should be discovered."

This section postpones "accrual" until the breach of warranty is "discovered" or reasonably should have been "discovered".

■ On the other hand, negligence actions in Michigan "accrue" when "the wrong upon which the claim is based (is) done regardless of the time when [the] damage results." See, MCLA § 600.5827; MSA § 27A.5827, which provides:

"SEC. 5827. Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."

State courts have, however, expansively interpreted § 5827 where personal injury suits are involved. In Michigan, negligence actions resulting in personal injury in fact "accrue" when the plaintiff "discovers" or should have "discovered" his or her injury. See, *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974); *Cartmell v. Slavik Co.*, 68 Mich.App. 202, 242 N.W.2d 66 (1976).

For example, in *Connelly v. Paul Ruddy's Co.*, 388 Mich. 146, 200 N.W.2d 70 (1972), the plaintiff's complaint alleged negligent machine design and repair, which over three years later resulted in personal injury to the plaintiff. The applicable state statute of limitations, however, barred actions commenced more than three years after the defendant's wrong was "done". The appellate court concluded that plaintiff's claim was untimely because the defendant's negligent repair and design, the wrong "done", took place over three years earlier.

The Michigan Supreme Court unanimously reversed. Justice Brennan, speaking for the court, held that a defendant's wrong is not "done", and the statute of limitations does not therefore begin to run, until the

plaintiff discovers or should have discovered his or her injury.

Later, in *Williams v. Polgar, supra,* the Michigan Supreme Court held that a plaintiff's claim for injuries resulting from a negligently misrepresented land abstract did not "accrue" until the plaintiff knew or should have known of the negligent misrepresentation. Justice Williams, writing for the majority, concluded at page 25 of 391 Mich., at page 158 of 215 N.W.2d that a discovery rule is entirely consistent with general tort principles in Michigan:

"Under these standards, is there a tort cause of action accruing before plaintiff has knowledge, or should have knowledge, of the negligent misrepresentation? We think not.

"General tort law principles in Michigan as discussed *supra,* support our determination that the statute of limitations does not begin running until the point where plaintiff knows or should have known of this negligent misrepresentation. At that point, the four elements in *Connelly, supra,* are satisfied: a legal duty exists, such duty is breached, a proximate causal relation is established (if plaintiff can show reliance on the abstract), and the plaintiff then is, or should be, aware of any resultant damages." (Footnotes omitted).

Moreover, in a footnote to that opinion, the court suggested at page 24, 215 N.W.2d 149, that an identical discovery rule would follow in a products liability case.

Under either of the two theories alleged in the plaintiffs' complaint, therefore, this court concludes that "accrual" takes place when Mr. Bonney "discovered" or should have "discovered" his claim. Plaintiffs thereafter have three years within which to bring suit. MCLA § 600.5805(8), (9); MSA § 27A.5805(8), (9).

The defendant has moved this court to grant judgment in its favor because, it alleges, Mr. Bonney's deposition testimony convincingly establishes that he "discovered", in 1970, that he had a claim against the Upjohn Company. For this reason, the defendant argues, suit should have been brought by 1973, three years after plaintiffs' claims first "accrued".

In opposition, the plaintiffs argue that the June 1977 deposition merely establishes the fact that in 1970, Mr. Bonney had "assumed" a connection between Lincocin and the injuries he was experiencing. Plaintiffs argue, therefore, that because Upjohn had failed to prove that Mr. Bonney knew in 1970 that Lincocin caused his illness, summary judgment should be denied because the defendant has insufficiently shown plaintiffs' claims to be untimely.

Plaintiffs further contend that even if the deposition testimony showed that Mr. Bonney did know, in 1970, that Lincocin caused his illness, "accrual" under Michigan law did not then take place. They argue that "accrual" in this case did not occur until Mr. Bonney discovered that he had been injured, that the defendant had caused that injury, and that the defendant's acts were in some way improper. Plaintiffs maintain that even assuming Mr. Bonney knew of his injury in 1970, and that Lincocin caused that injury, they did not suspect any wrongdoing on defendant's part until January, 1975 when they read about Lincocin in the *Grand Rapids Press.* Plaintiffs consequently argue that "accrual" did not occur until 1975, shortly before initiating this action.

### DID PLAINTIFFS KNOW IN 1970 THAT LINCOCIN CAUSED MR. BONNEY'S ILLNESS?

As has already been noted, plaintiffs' claims "accrue" once those claims are "discovered", or should have been "discovered". However, in the recent case of *Leyson v. Krause,* 92 Mich.App. 759, 285 N.W.2d 451 (1979), the Michigan Court of Appeals held that whether or not a plaintiff should have "discovered" his claim is a question of fact reserved for the jury and not properly a matter to be decided by a court of law once a jury trial has been demanded. This court, therefore, is precluded from deciding whether plaintiffs should have discovered their claims in 1970, and summary judgment in favor of Upjohn cannot at this time

be based upon that ground. Consequently, the only issue before this court arising out of defendant's summary judgment motion is whether plaintiffs "discovered" their claims in 1970. If in fact plaintiffs did "discover" their claims in that year, then "accrual" took place more than three years prior to the filing of plaintiffs' suit and their complaint is resultingly untimely.

■ Before granting summary judgment, it must be clear that no genuine issue of material fact exists. Because the burden of proof is on the movant, the evidence presented to the court is always construed in favor of the party opposing dismissal. *See,* 10 Wright and Miller, *Federal Practice and Procedure* § 2727. As the United States Supreme Court said in *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962):

> "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."

■ In light of this, I am convinced that the deposition testimony alone does not establish as a matter of law that Mr. Bonney knew in 1970 that Lincocin was the cause of his ailing condition. Instead Mr. Bonney's testimony indicates only that he "assumed" that his illness and the drug were in some way related. This is insufficient evidence on which to grant summary judgment. I accordingly deny the defendant's motion for summary judgment based on the claim that Mr. Bonney "knew" in 1970 that the defendant's product caused his illness.

## WHEN DO PLAINTIFFS DISCOVER THEIR CLAIM?

Even assuming that the deposition testimony does, in fact, establish that Mr. Bonney knew in 1970 that Lincocin caused his illness, for the following reasons I conclude that this alone is not enough for a holding that plaintiffs' claims at that time "accrued".

As has been said, personal injury and product liability claims in Michigan do not accrue until the plaintiff "discovers" them. This is generally known as the so-called "discovery rule" which, in several jurisdictions, has been either judicially or statutorily applied in drug product-liability cases for claims based upon tort or breach of warranty. *See, e. g., Goodman v. Mead Johnson and Company,* 534 F.2d 566 (3rd Cir. 1976) (tort); *Grigsby v. Sterling Drug, Inc.,* 428 F.Supp. 242 (D.C.1975), *aff'd,* 543 F.2d 417 (D.C.Cir.1976) (tort, breach of warranty); *Raymond v. Eli Lilly and Co.,* 117 N.H. 164, 371 A.2d 170 (1977) (tort).

When the Bonney's claim accrued depends, therefore, upon how state law defines this discovery rule. In Minnesota and Maryland, for example, "discovery" is said to occur when the plaintiff knows or should have known of his or her injury. *Harig v. Johns-Manville Products Corp.,* 284 Md. 70, 394 A.2d 299 (App.Ct.Md.1978) (Maryland); *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155 (8th Cir. 1975) (Minnesota). In New Hampshire, Texas and New Jersey, on the other hand, the plaintiff must know of his or her injury and the causal connection between the defendant's product and that injury. *Burd v. New Jersey Telephone Co.,* 76 N.J. 284, 386 A.2d 1310 (1978) (New Jersey); *Raymond v. Eli Lilly and Co., supra* (New Hampshire); *Roman v. A. H. Robins Co., Inc.,* 518 F.2d 970 (5th Cir. 1975) (Texas). Moreover, the Supreme Court recently applied this rule in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), where it held that claims arising under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), accrue once plaintiffs know of their injuries and the causal origins of those injuries. Finally, in the District of Columbia, the statute of limitations begins to run from the time the plaintiff learns, or in the exercise of due diligence should have learned, that his or her injuries were not simply misfortune but resulted from an undisclosed defect in defendant's product. *See, Grigsby v. Sterling Drug, Inc., supra.*

■ In the instant case, the defendant asserts that Michigan defines "discovery" in the same way as do New Hampshire, Texas

and New Jersey. In other words, the defendant claims that in Michigan, plaintiffs "discovered" their claims once they had knowledge of the injury and of the causal connection between the defendant's product and that injury. The plaintiffs, on the other hand, maintain that in Michigan one must additionally have good reason to believe that the defendant has acted improperly before a breach of warranty or negligence claim has accrued. For the reasons set out below, I conclude that plaintiffs' view of the matter is the correct one, and I accordingly deny the defendant's summary judgment motion.

## A. "DISCOVERY" OF A BREACH OF WARRANTY CLAIM.

In *Southgate Schools v. West Side Co.,* 399 Mich. 72, 247 N.W.2d 884 (1976), the Supreme Court of Michigan determined that in a products liability claim against a manufacturer which did not result in personal injury to the plaintiff, "accrual" did not occur until the plaintiff "discovered" or should have "discovered" the defendant's faulty workmanship.

This is the same approach taken by the Court of Appeals in *Cartmell v. Slavik Co., supra.* In that case, the plaintiff initiated a breach of warranty action against an installer of roofing tiles 14 years after he first noticed damage to his ceiling. In upholding the lower court's denial of summary judgment, the Court of Appeals noted, 68 Mich. App. at page 206, 242 N.W.2d at page 68:

"But for there to have been sufficient knowledge of the cause of action to accrue the plaintiffs would have had to have known or should have known that there were leaks that were caused by a failure of the tile or its installation. Knowing that there are leaks and knowing that there are leaks caused by faulty material or workmanship in the roof are two different things. Plaintiffs may have *suspected* that the leaks were the fault of the defendant, but they did not *know* this until 1974. Of course, whether plaintiffs *should* have known of the breach earlier is another question. At

what time the breach 'reasonably should have been discovered' is properly a question to be decided by the trier of fact." (Footnotes omitted).

Although the Michigan Supreme Court has not yet expressly applied this same "discovery" rule in breach of warranty cases involving personal injury, I am convinced that the Court, if faced with this question, would defer "accrual" until the plaintiff discovered or should have discovered the defendant's improper act. I cannot believe that Michigan courts would adopt, in cases involving a breach of warranty resulting in injuries to the plaintiff, a less-stringent definition of "accrual" than that applied in cases involving injury only to property.

Indeed, Judge Cornelia Kennedy, in *Crocker v. McCabe-Powers Auto Body Company,* 321 F.Supp. 1154 (E.D.Mich.1970), a similar case concerning "accrual" of a personal injury, breach of warranty claim, likewise held that the statute of limitations does not bar a claim until the plaintiff discovers or reasonably should have discovered the breach of warranty.

In the present action, nothing in the record indicates that this plaintiff knew that his injuries resulted from the defendant's faulty material or workmanship. At best, the defendant has shown that the plaintiff knew he had been injured, and that the defendant's product may have caused that injury. I find this to be insufficient grounds on which to hold that plaintiffs' claim accrued in 1970, over three years before filing suit, and I accordingly deny defendant's motion for summary judgment as it relates to plaintiffs' breach of warranty claim.

## B. "DISCOVERY" IN NEGLIGENCE ACTIONS.

As has already been noted, Michigan courts delay "accrual" of negligence actions until the plaintiffs discover or should have discovered their claims. *See, Williams v. Polgar, supra.* Plaintiffs then have three years, pursuant to Section 5827, within which to bring suit.

In deciding whether plaintiffs' claims are timely, it is therefore again crucial to determine how Michigan courts define the "discovery rule". If Michigan courts apply a limited discovery rule in products liability cases whereby "accrual" occurs upon the plaintiff's knowledge of his injury and its causal origin, then presuming that Mr. Bonney knew in 1970 that his injuries resulted from the Lincocin he was taking, his claim was barred in 1973. If, on the other hand, the same expansive definition of "discovery" applied in breach of warranty cases also applies in cases involving personal injury negligence, then plaintiffs' claim did not "accrue" until they had reason to believe that the defendant acted improperly. For reasons which follow, I hold that Michigan courts can be expected to apply this latter, more expansive definition.

The Michigan Supreme Court has already concluded that an expansive discovery rule should be applied in tort actions arising out of negligent land abstracts. *See, Williams v. Polgar, supra*, where the court held that the plaintiff's claims did not "accrue" until the plaintiff had knowledge, or reasonably should have had knowledge, of the defendant's alleged negligent misrepresentation.

Further, in *Leary v. Rupp*, 89 Mich.App. 145, 280 N.W.2d 466 (1979), the Michigan Court of Appeals determined that "discovery" in most malpractice cases involved more than just mere knowledge of the injury and its cause. There, the plaintiff's malpractice claim based on injuries she incurred as the result of the defendant's allegedly negligent prescription of a penicillin substitute was dismissed by the trial court because the plaintiff was aware over seven years earlier that the defendant's act had caused her injuries. In reversing this ruling, the Court of Appeals determined that "discovery" in most circumstances meant something more than just knowledge of the injury and its causal elements. While mere knowledge would appear to be enough in cases where the act and knowledge of the resulting injury alone put the plaintiff on notice of the defendant's negligence, generally the plaintiff must have some reason to believe that the defendant acted improper-

ly. The court said, at pp. 148–149, 280 N.W.2d at p. 468:

"A person usually visits a doctor because of a physical or mental problem. Therefore, it is easy to assume that subsequent developments are due to the problem which initiated the contact rather than negligence on the part of the doctor. In addition, the doctor himself may allay any suspicions the patient might have. See *Kelleher, supra* [*Kelleher v. Mills*, 70 Mich.App. 360, 245 N.W.2d 749], *Cates v. Frederick W. Bald Estate*, 54 Mich.App. 717, 221 N.W.2d 474 (1974). For these reasons knowledge of the act and resulting injury alone may be insufficient to commence the running of the statute of limitations. On the other hand, it is not necessary that the plaintiff recognize that she has suffered an 'invasion of a legal right'. *Patterson v. Estate of Flick*, 69 Mich.App. 101, 244 N.W.2d 371 (1976). We conclude that in order to discover 'asserted malpractice' a person must know of the act or mission (sic) itself, i. e., prescribing polycillin, and have good reason to believe the act itself was improper or was done in an improper manner.

Under certain circumstances mere knowledge of the act will be sufficient because it alone gives good reason to believe it was improper. For example, in *Patterson, supra*, the defendant severed a femoral nerve during an appendectomy resulting in paralysis.

In contrast, a person may know of both the act and some resulting pain but not be aware of any wrongdoing by defendant. In *Kelleher, supra*, the plaintiff knew of the act, the fitting of dentures, and resulting discomfort. However, because of the dentist's statement indicating plaintiff 'didn't know how to wear dentures' it was held to be a question of fact whether plaintiff discovered or should have discovered the asserted malpractice."

Similarly, in *Leyson v. Krause, supra*, the plaintiff's fallopian tubes were scarred when she underwent an appendectomy in

1964. No malpractice suit, however, was initiated until 1974, even though the plaintiff admittedly knew of the scarring immediately after her operation.

In reversing the lower courts dismissal of the complaint based upon the statute of limitations, the Michigan Court of Appeals decided that under these facts, the plaintiff had not "discovered" the defendant's malpractice for purposes of summary judgment. After citing *Leary v. Rupp, supra* in support, the court concluded:

"In the case at bar, plaintiff knew of the acts constituting the alleged malpractice in 1964 and knew of the resulting harm no later than 1971. She claims, however, that she did not know [the] defendant's acts constituted malpractice until 1974. Plaintiff's testimony therefore raises a fact question: when plaintiff should have realized that malpractice had been committed. In granting accelerated judgment, the trial court decided the question in favor of the defendant. Had there been no demand for the jury trial, the court would have acted properly in deciding the question at the hearing, just as if the case had proceeded to a bench trial. However, because plaintiff timely demanded trial by jury, the court rule (GCR 1963, 116.3) requires that the question be decided by the jury at trial rather than by the court at the hearing on the motion." (Footnote omitted).

Because the tendency in the State of Michigan has been to delay "accrual" in personal injury cases until either the plaintiff knows, or should reasonably have discovered, that the defendant's act was in some way improper, I conclude that in the instant case this is the rule to be applied in analyzing the defendant's summary judgment motion. Nothing in the record conclusively indicates that in fact this plaintiff knew that the defendant was in some way negligent. Deposition testimony establishes, at best, that the plaintiff "assumed" some connection between Lincocin and the resulting illness. Moreover, Mr. Bonney continued to ingest the drug until the end of the summer of 1970, after the time he had "assumed" that his condition and the Lincocin were in some way related. Finally, even plaintiff's attorney, as well as his doctor, failed to perceive in 1970 any negligence on the part of The Upjohn Company which would explain the plaintiff's serious illness. I conclude the evidence at this point does not establish as a matter of law that plaintiff knew or should have known prior to 1975 that defendant in some way acted improperly in marketing Lincocin. This is an issue properly left to the fact finder.

*3. CONCLUSION.*

Denying defendant's motion for summary judgment comports, I believe, with sound public policy and the principles of justice and equity.

Delaying "accrual" of a personal injury cause of action is an equitable question which compels balancing the plaintiff's right to seek redress for injury incurred against the defendant's reasonable expectation of the duration of its exposure to liability, as well as possible prejudice to the defendant due to delay. For several reasons, I am convinced that the defendant is not in fact prejudiced by the adoption of an expanded discovery rule in products liability cases.

First, the defendant is in a unique position as a potential tortfeasor. As Judge Kenison suggested, in writing for the Supreme Court of New Hampshire in the case *Raymond v. Eli Lilly and Co., supra,* the harmful qualities of a drug manufacturer's products are frequently unknown when the drugs are marketed:

"The harmful propensities of drugs are often not fully known at the time the drugs are marketed. These companies know or at least should expect that some time may pass before the harmful effects of their products manifest themselves in drug users and that there may be another lapse of time before the injured person is able to discover the causal connection between his injury and the drug he consumed. *See* 3A L. Frumer & M. Friedmanx, Products Liability § 39.01[3]

 

(1976); Kidwell, *The Duty to Warn: A Description of the Model of Decision,* 53 Tex.L.Rev. 1375 (1975). Given these unique circumstances and the fact that the scope of a drug manufacturer's liability is substantial and seems to expand continually through the growth of substantive tort and warranty doctrines. W. Prosser, *supra,* §§ 96–99, we do not think the drug company can reasonably expect to be immune to suit before its customer has a fair opportunity to discover the company's tortious conduct." 371 A.2d at 176.

Second, the defendant is not likely to be prejudiced by lost or inaccurate evidence. Most of the evidence applicable to drug products liability is generally documentary in nature, a type of evidence not usually lost or unreliable. Further, passage of time is likely to increase, rather than decrease, the quantity of available reliable evidence.

Finally, the drug manufacturing companies, through processing, inspecting and testing products, often have exclusive access to much of the information necessary for the effective control of dangerous products. *See, Raymond v. Eli Lilly, supra,* at 176. *Cf.,* Note, *Recent Developments in Wisconsin Medical Malpractice Law,* 1974 Wis.L.Rev. 893; Owen, *Punitive Damages in Product Liability Litigation,* 74 Mich.L. Rev. 1258 (1976). As the New Hampshire Supreme Court concluded at p. 177:

"We do not think that in suits such as the instant one 'the passage of time would increase problems of proofs or entail the danger of false, fraudulent, frivolous, speculative or uncertain claims.' *Wiggington v. Reichold Chemicals, Inc.,* 133 Ill.App.2d 776, 779, 274 N.E.2d 118, 120 (1971). It is manifestly unrealistic and unfair to bar a tort suit before the injured party has an opportunity to discover that he has a cause of action, *Lipsey v. Michael Reese Hosp.,* 46 Ill.2d 32, 41, 262 N.E.2d 450, 455 (1970), at least in a case in which the defendant has not demonstrated that the delay itself has been prejudicial to him. In conclusion, the equities clearly support application of the discovery rule in this case.

One of the principal justifications for applying the discovery rule in medical malpractice cases is that it provides protection against substandard medical care. Note, *supra* at 896. Protection against the manufacture and distribution of harmful drugs is also desirable and necessary. The additional burdens placed upon the defendant by the discovery rule are justified if they cause the defendant to conform to a higher standard of care. *Fernandi v. Strully,* 35 N.J. 434, 173 A.2d 277 (1961); W. Prosser, *supra* at 145; *see Nelson v. Volkswagen of America, Inc.,* 315 F.Supp. 1120 (D.N.H.1970)."

In light of this, and for the reasons set out above, defendant's motion for summary judgment is denied without prejudice to renew at trial.

IT IS SO ORDERED.