**Kathleen MACK, Plaintiff,**

v.

**A.H. ROBINS COMPANY, INC., a Virginia corporation, Defendant.**

**No. Civ. 82–098–TUC–ACM.**

United States District Court,
D. Arizona,
Tucson Division.

June 30, 1983.

Michael J. Vingelli, Richard Parrish, Tucson, Ariz., for plaintiff.

Thomas A. McGuire, O'Conner, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for defendant.

## MEMORANDUM OF DECISION
## AND ORDER

MARQUEZ, District Judge.

The defendant, A.H. Robins Company, Inc., has moved for summary judgment pursuant to Federal Rules of Civil Procedure, 56 and Local Rules of Practice 11(i). Hearing was had on June 6, 1983 after which the court took the matter under advisement.

Plaintiff asserts that her cause of action did not accrue until December of 1981 when she learned of the defective nature of the defendant's product through a newspaper article. And therefore her complaint, filed February of 1982, is within Arizona's two-year period.

Defendant asserts that the cause of action accrued when plaintiff was informed that her injury was caused by their product in August of 1979.

FACTUAL BACKGROUND

In 1971, plaintiff had her physician insert a contraceptive device known as a Dalkon Shield and manufactured by defendant company A.H. Robins. In August of 1979, plaintiff began suffering severe discomfort in the lower abdomen and her urinary tract and on August 17, 1979, was operated on for pelvic inflammatory disease. As a result of the pelvic inflammatory disease, plaintiff has had to undergo a complete hysterectomy precluding her from bearing children.

While in the hospital in August of 1979, the plaintiff was advised by her doctors that the Dalkon Shield had caused her infection. At the deposition of plaintiff taken January 21, 1983, she testified as follows:

Q Now how about the Dalkon Shield? What do you think it had to do with your infection in 1979?

A Well, I think it was the cause of it.

Q Did you ever discuss that with any of the doctors?

A Well, the doctors seem to be—they informed me, told me that.

Q Who was that?

A Whoever the staff doctors were that saw me.

Q In 1979, in your hospitalization you mean?

A Yes.

Q Were they pretty definite about that?

A They just certainly gave me that impression from the things they said, the kinds of things they asked me, the comments about never having another one and so forth, the fact that they removed it immediately . . . .

Since plaintiff's release from the hospital she has been under the treatment of Dr. John Long of Tucson for routine follow-up gynecologist care. In giving Dr. Long her medical history she had told him that she had gotten sick as a result of the Dalkon Shield. Her deposition testimony was:

Q And you talked about the Dalkon Shield? (With Dr. Long)

A I told him that I had had one.

Q Did you give any specifics like I had a Dalkon Shield, why would anybody let me have that, or I wish I wouldn't have had it now, and he agreed with you; things of that type?

A Well, sure, I wish I hadn't had it.

Q Did you express that to him and have him agree with you?

A I can't remember. I told him I had had one and *I had gotten very sick from it.*

In plaintiff's opposition to the defendant's motion for summary judgment she has attached an affidavit wherein she states that when her pelvic inflammatory disease occurred in 1979 and she underwent an operation at the University Hospital, no one told her that it was because the Dalkon Shield *was defective or otherwise improperly* manufactured or that the pelvic inflammatory disease was caused *by some defect in the shield.* She also states that because the physicians suggested she had been remiss in not having physical checkups for at least three years and that the presence of the IUD always requires periodic checkups, she believed at the time that the IUD was in some manner a con-

tributing factor in her inflammatory disease. Plaintiff states also that she did not become aware of the defects in the Dalkon Shield itself until she read a story in the Arizona Daily Star dealing with the filing of a class action by another plaintiff. Finally, plaintiff states that before reading the newspaper account of the class action, she had never been told by any physician or surgeon or lay person that the Dalkon Shield itself, because of possible defects in its manufacture, might have been the cause of her sickness. Plaintiff filed her complaint in the district court on February 23, 1982.

DISCUSSION

### WHAT STATUTE APPLIES

■ Defendant's motion for summary judgment is based on Arizona's two-year statute of limitations. Plaintiff, while conceding that the two-year period applies, is disputing how such statute is to be applied to the facts of this case. The plaintiff's version of the rule is that a cause of action does not accrue until the plaintiff actually discovers, or should have discovered with reasonable diligence, the defective nature of the product or the improper conduct of the manufacturer.

As pointed out before, Arizona's statute of limitations to be applied to the facts of this case is not in dispute. A.R.S. § 12–542 covers injuries done to the person of another. While plaintiff's complaint seeks damages for, among other things, negligence, breach of warranty, products liability, and fraudulent misrepresentation, all of these claims arise out of the same operative facts and sound in personal injury tort law.

In *Wetzel v. Commercial Chair Company*, 118 Ariz.App. 54, 500 P.2d 314, (1972), the plaintiff had been injured by a defective chair manufactured by the defendant, and had raised claims of breach of warranties among his tort claims. The court held that regardless of the pleading "tag" that was applied to the various causes of actions, the claim was essentially simply one of strict liability in tort, and that because the basic issues raised are primarily the same—the sale of a defective product, their injury resulting therefrom, and the damages, the court would therefore apply A.R.S. § 12–542 to the facts of the case and the two-year personal injury statute of limitations. *Id.* 500 P.2d at 317.

A.R.S. § 12–542 states in pertinent part:

Except as provided in §§ 12–551 and 12–564, there shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

1. For injuries done to the person of another.

A.R.S. § 12–551 applies to Product Liability actions and incorporates the two-year period of § 12–542. A.R.S. § 12–564 defines the statutes of limitations period for health care injuries (medical malpractice) and is of no relevance here.

### THE "DISCOVERY RULE"

The legal issue the court must decide on this Motion for Summary Judgment is: when does the cause of action accrue for the purposes of starting the two-year limitation period?

The court has examined several Arizona cases to determine how the courts of this state have applied A.R.S. § 12–542. In *Wetzel, supra,* the court was faced with an issue of whether to apply a two-year statute for personal injury actions, or the four-year statute relating to "catch all" limitations period. The plaintiff had purchased an office chair from the defendant corporation, and was injured on November 1, 1967 when the chair broke. Over three years later, on November 2, 1970, the plaintiff filed his suit. The plaintiff had raised a claim of strict liability and a contract breach of warranty claim. While the court's discussion of the law centered around the issue of which limitations period to apply, once it concluded that it would apply the two-year limitation period, without discussion, it apparently determined that the cause of action accrued, within the meaning of A.R.S. § 12–542, at the time

that the chair broke, causing the personal injuries to the plaintiff.

In *Long v. Buckley*, 129 Ariz. 141, 629 P.2d 557 (1981), the Arizona court held that, at least with respect to professional malpractice claims, the cause of action accrues when the plaintiff knew or should have known of defendant's conduct. Id. 629 P.2d at 559. *Long* dealt with a legal malpractice action against an attorney who had failed to file a lawsuit within the limitations period. The *Long* court relied on other malpractice cases such as *Sato v. Van Denburgh*, 123 Ariz. 225, 599 P.2d 181 (1979), and *Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100 (9th Cir., 1979) to arrive at this rule.

In *Long* the court, at footnote 4, quoted the California Supreme Court where it discussed the reason for applying such a rule in legal malpractice actions. The California court rejected the rule previously in use, that a cause of action accrues at the time of the negligent act, explaining:

> Upon reconsideration, we find that the rule as to legal malpractice contrasts with the rule as to accrual of causes of action against practitioners in all other professions; it ignores the right of the client to rely upon the superior skill and knowledge of the attorney; it denigrates the duty of the attorney to make full and fair disclosure to the client; it negates the fiduciary character of the attorney-client relationship.

> We conclude that the statute of limitations for legal malpractice, as for all professional malpractice, should be tolled until the client discovers, or should discover, his cause of action. 629 P.2d at 560.

In *Sato*, a claim against the plaintiff's accounting firms, the court held that the rule in Arizona for when an action accrues is when the plaintiff knows, or in the exercise of reasonable diligence should have known, of the defendant's negligent conduct or when the plaintiff is first able to sue.

However, *Sato, Yazzie*, and *Long* all dealt with negligence actions against professionals. The policy considerations discussed by the courts in *Long* do not have the same import in products liability personal injury cases. A plaintiff does not realize, and cannot be reasonably expected to discover, that he has a cause of action against a professional who has provided services to him until he discovers or determines that the professional has acted in a negligent manner. There is no personal injury or traumatic event caused by a tangible product which puts him on notice that something may be amiss.

Because there are no cases directly on point in Arizona, the court has looked to the application of the discovery rule in other jurisdictions. In *Roman v. A.H. Robins Co.*, 518 F.2d 970 (5th Cir.1975), the plaintiff was given a prescription for a drug, Sulla, manufactured by the defendant, to treat a kidney infection. In July of 1968, the plaintiff began having difficulties with her eyes, and was diagnosed as having a rare medical condition probably caused by an allergic reaction to the drug. In September of 1973 the plaintiff sued the defendant under a products liability theory. The court held that the time at which the plaintiff was first advised that her physical problems probably resulted from an adverse reaction to the defendant's product, was when her cause of action accrued, and that her suit was not filed over five years later, beyond the limitation cutoff in the "discovery rule". Id. at 972. In another case, *Gilbert v. Jones*, 523 S.W.2d 211, (Tenn.App.1975) the court held that the plaintiff's cause of action accrued when she was apprised by her doctor of the causal relationship between her high blood pressure and the contraceptive pill manufactured by the defendant. Id., at 213.

In some jurisdictions a rather strict approach is taken by the courts with regard to the plaintiff's duty to discover the cause of action. Under the strict rule a cause of action may accrue even though a plaintiff does not have actual knowledge of the cause of the injury, but has sufficient information to permit the plaintiff to discover the source if acting with reasonable dili-

gence. *Allen v. Ortho Pharmaceutical,* 387 F.Supp. 364 (S.D.Tex.1974), *Newcomer v. Searle & Co.,* 378 F.Supp. 1154 (E.D.Pa. 1974).

In other jurisdictions the discovery rule is applied such that the plaintiff must discover or should discover with reasonable diligence not only that he has been harmed, but also that there is a nexus between the defendant's product and his harm. *See e.g. Roman, supra;* and *Breaux v. Aetna Casualty & Surety Co.,* 272 F.Supp. 668 (E.D. La.1967)

█ Generally, when a person suffers an injury such that the person is unaware of the cause, the claim does not accrue until the injured person discovers, or by the exercise of reasonable diligence should have discovered, the cause of the injury. 91 A.L.R.2d 991, § 2(a). Also, while courts show willingness to relax the strict accrual rules when it is shown that the plaintiff did not know and had no reason to know of the causal connection between a manufacturer's product and the injuries suffered by the plaintiff, there is no such willingness when it is only the extent of the injuries or damages which is not known. Id. at § 2[b]. In Arizona, plaintiffs are charged with "reasonable diligence to discover". *Rodriquez v. Manoil,* 9 Ariz.App. 225, 450 P.2d 737 (1969).

One of the cases cited by the plaintiff in her opposition demonstrates the application of the discovery rule that the court deems the law of this jurisdiction. In *Raymond v. Eli Lilly and Co.,* 412 F.Supp. 1392 (D.N.H.1976), the plaintiff filed a complaint based on negligence, breach of warranty, and strict liability, against the defendant claiming that the oral contraceptive medication, C-Quens, manufactured and distributed by the defendant, caused hemorrhages of the optic nerves in each of her eyes leaving her legally blind. Plaintiff had taken the defendant's product in early 1968 and after a lengthy series of visits to various doctors and clinics plaintiff knew by June of 1969 that her right eye had hemorrhaged. Throughout this period the effect of the C-Quens birth control pill on the optic nerve of the eye was not known to the doctors. The plaintiff continued to see various doctors and sometime in 1970 and '71 learned of a newspaper article concerning another woman who had recovered a verdict for blindness allegedly caused by oral contraceptives. Plaintiff then went to an attorney who did nothing and finally in 1975 sought the advice of another attorney who immediately brought suit.

The *Raymond* court analyzed the various applications of the accrual and discovery rule in other jurisdictions and held that the cause of action accrues when the plaintiff either knows or should have known of the causal nexus between the harm and the defendant's product. The court stated:

> In conclusion ... the plaintiff did not know of a correlation between her consumption of the C-Quens and the hemorrhages of her eyes prior to February 28, 1969.... I find that plaintiff had no reason to believe that her blindness was other than idiopathic until she learned, through the newspaper article, that another user of oral contraceptives had suffered the same fate. She then had reasonable grounds to believe that there might be a *causal connection between her blindness and the defendant's drug.* At that time, her cause of action accrued. *Id.* at 1402 (emphasis added)

The United States Supreme Court recently applied this version of the discovery rule in *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) where it held that claims arising under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), accrue once plaintiffs know their injuries and the causal origins of those injuries. *Id.* 100 S.Ct. at 360.

The court has examined the cases cited by the plaintiff in her opposition to the Motion for Summary Judgment, and has determined that these cases support the discovery rule as applied above. In *Louisville Trust Company v. Johns-Manville Products Corp.,* 580 S.W.2d 497 (Ky.1979) the court held that the cause of action accrued when the plaintiff discovered the

injury and the cause of the injury. In *Harig v. Johns-Manville Products Corporation*, 284 Md. 70, 394 A.2d 299 (1978) the same discovery rule was used, i.e., when the plaintiff does or should have discovered the cause of the injury.

Plaintiff has also cited *Hornung v. Richardson-Merrill, Inc.*, 317 F.Supp. 183 (D.Mont.1970). In that case the court denied the defendant's Motion for Summary Judgment because the court concluded there was a genuine issue of a material fact, i.e. whether the husband knew that the drug was the source of the injury more than three years before the suit was brought. The defendant drug company tried to show such knowledge on the part of the plaintiff by demonstrating that there had been wide publicity given to their product and cataracts, and that the plaintiff ought to have had knowledge long before he admitted having such knowledge. The court stated, "Defendant's proof does not, however, show that plaintiffs had any specific knowledge that MER/29 was the source of the damage." The *Hornung* court applied the majority approach to the discovery rule, where the plaintiff must have knowledge of the injury and a causal connection with the defendant's product, but does not have to have knowledge of negligent conduct or the product's defect. The court has reviewed the balance of the cases cited by plaintiff in her opposition to the motion for summary judgment and has concluded that none support a different application of the discovery rule. The cases cited by plaintiff either support the majority approach, or are cases where a motion for summary judgment was denied because there was a genuine issue of material fact relating to when the plaintiff knew or should have known of the connection between the defendant's product and the injury. In fact, the only case that supports a different approach to the discovery rule is *Bonney v. Upjohn Co.*, 487 F.Supp. 486 (W.D.Mich.1980) which this court determines is not the rule in the majority of jurisdictions, and is not the rule in Arizona.

In *Bonney*, the plaintiff had been injured when he took a radical antibiotic manufactured by the defendant. The court adopted the reasoning of medical malpractice cases in that jurisdiction to arrive at its conclusion that one additional element should be made a part of the discovery rule. This element was that the plaintiff must also have some reason to know or believe that the defendant acted improperly.

■ In Arizona, as explained earlier, plaintiffs are charged with due diligence in pursuing their claims. *Rodriquez v. Manoil, supra*. Due to *Rodriquez*, and because a products liability claim does not raise the policy considerations involved in a professional malpractice case, this court concludes that, as with the majority of jurisdictions, this final element of requiring a plaintiff to have reason to know of the defendant's improper conduct or defect in the product is not required in Arizona. In other words, in Arizona a cause of action accrues once the plaintiff knows of the injury and the causal connection between the defendant's product and that injury.

## GENUINE ISSUE OF MATERIAL FACT

■ Recent Ninth Circuit cases have held that in a diversity action an issue of when a cause accrued was a question of law which could be determined on a motion for summary judgment, *Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022 (9th Cir.1983) and that summary judgment is appropriate where undisputed facts raise a complete defense as a matter of law. *Twentieth Century Fox Film Corporation v. MCA, Inc.*, 715 F.2d 1327 (9th Cir.1983). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P., rule 56, *Derrickson v. Board of Education of City of St. Louis*, 537 F.Supp. 338 (E.D.Mo., 1980). The court must now determine whether there exists a genuine issue as to any material fact. 6 Moore's Federal Practice, ¶ 56.15[1.8–0] p. 56–391 (2d Ed.1982). Summary Judgment is proper where there is no dispute as to a material fact and such facts furnish an

adequate basis for the application of the proper legal principles. Id. at p. 56–398.

 The legal principle to be applied here is the discovery rule discussed above and Arizona's statute of limitation, A.R.S. § 12–542. The material facts include the date of the filing of the complaint, the date of the injury, and the date that the plaintiff knew or should have known that the injury was caused by the defendant's product. It is clear from the statements made by the plaintiff at her deposition that she knew of her injuries in August of 1979, and that the injuries were caused by the defendant's product.

The court has scrutinized the affidavit in support of plaintiff's opposition and determined that such statements do not dispute the fact that plaintiff knew that defendant's product had caused her injuries. The statement in plaintiff's affidavit would only be material if the court were to use the *Bonney* approach to the discovery rule. Put differently, plaintiff's affidavit has done nothing to negate the statements made at her deposition that as of August of 1979 she knew that she had been injured, and knew that the injuries had been caused by the defendant's product. Plaintiff merely asserts that no one told her of the defendant's improper conduct or defect in the defendant's product at the time she was in the hospital in August of 1979. Plaintiff did not learn of such defects or problems with the defendant's product until she read the accounts in the newspaper of other people who had filed suit against the defendants. For the reasons discussed above these statements do not raise an issue as to a material fact.

In a similar case, *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir., 1983), the court analyzed the statements made by the plaintiff at her deposition and concluded that the plaintiff was aware that the Dalkon Shield had perforated her uterus and caused an infection. In the case at bar, plaintiff has stated in her complaint, at paragraph 55, that she was advised by her physicians that her severe acute pelvic inflammatory disease was caused by the Dalkon Shield in August of 1979, when she was operated on for the pelvic inflammatory disease.

It is the court's conclusion from the foregoing that the plaintiff's cause of action accrued, within the meaning of A.R.S. § 12–542, in August of 1979, and that her cause of action is barred by the statute of limitations. Therefore,

IT IS ORDERED that defendant's Motion for Summary Judgment is granted.

IT IS ORDERED that judgment be entered in favor of the defendant and against the plaintiff.