BONNEY v THE UPJOHN COMPANY

Docket No. 60821. Submitted November 2, 1982, at Grand Rapids.—
Decided September 26, 1983. Leave to appeal applied for.

In July, 1971, plaintiff Wallace Bonney was afflicted with a
condition of bone deterioration associated with certain dental
treatments. To alleviate the condition, he was advised to take a
drug called Lincocin manufactured by defendant, The Upjohn
Company. After taking considerable quantities of Lincocin, Mr.
Bonney developed a variety of psychological and physical disor-
ders which, he claimed, were eventually "crippling and dis-
abling to his person". Mr. Bonney underwent a series of medi-
cal examinations to uncover the cause of his malady. In Janu-
ary, 1975, plaintiffs, Wallace and Doris Bonney, read an article
in a local newspaper stating that the federal Food and Drug
Administration was concerned about the side effects of Linco-
cin. Plaintiffs recognized these side effects as the same disorders
Mr. Bonney had experienced. On February 25, 1975, Mr. Bon-
ney and his wife initiated a lawsuit against defendant in
federal district court. Subsequently, the defendant moved for
summary judgment, arguing that plaintiffs had not complied
with the statute of limitations. The court denied the motion.
Apparently, the court later vacated its order on the ground
that it lacked subject matter jurisdiction over the case. Plain-
tiffs then brought an action in the Kent Circuit Court on April
15, 1980, alleging that the defendant negligently manufactured
Lincocin and failed to warn potential users of its harmful side
effects. Defendant then moved for accelerated judgment, argu-
ing again that the plaintiffs had not complied with the statute

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 49.
  63 Am Jur 2d, Products Liability §§ 221, 223.
  Running of statute of limitations on products liability claim against
    manufacturer as affected by plaintiff's lack of knowledge of defect
    allegedly causing personal injury or disease. 91 ALR3d 991.
  What statute of limitations governs actions based on strict liability
    in tort. 91 ALR3d 455.
  When cause of action arises on action against manufacturer or
    seller of product causing injury or death. 4 ALR3d 821.

of limitations. Plaintiffs alleged that it was not until June 20, 1974, that they discovered the possibility that Lincocin was the source of Mr. Bonney's physical and psychological troubles. On October 2, 1981, the court, George V. Boucher, J., granted defendant's motion. Plaintiffs appealed. *Held:*

The period of limitations does not begin to run in a products liability case against a drug manufacturer until the plaintiff discovers or through the exercise of reasonable diligence should have discovered that he had a possible cause of action, which is a fact question for the factfinder.

Reversed and remanded.

MacKENZIE, P.J., concurred in part and dissented in part. She would hold that the discovery rule, that a plaintiff's cause of action accrues when he discovers or, through the exercise of reasonable diligence, should have discovered that he has a possible cause of action, does not apply to a products liability action for personal injuries based on a negligence theory. She concurred that the applicable period of limitations is three years. She would affirm.

### OPINION OF THE COURT

1. LIMITATION OF ACTIONS — PRODUCTS LIABILITY — DISCOVERY RULE — DRUGS — JURY QUESTION.

The period of limitations does not begin to run in a products liability case against a drug manufacturer until the plaintiff discovers or through the exercise of reasonable diligence should have discovered that he had a possible cause of action, which is a fact question for the factfinder.

### PARTIAL CONCURRENCE AND PARTIAL DISSENT BY MACKENZIE, P.J.

2. LIMITATION OF ACTIONS — PRODUCTS LIABILITY — NEGLIGENCE — DISCOVERY RULE.

*The discovery rule, that a plaintiff's cause of action accrues when he discovers or, through the exercise of reasonable diligence, should have discovered that he has a possible cause of action, does not apply to a products liability action for personal injuries based on a negligence theory; in such a case, the cause of action accrues, and the period of limitations begins to run, when the following have occurred: (1) the existence of a legal duty by defendant toward plaintiff; (2) the breach of such duty; (3) a proximate causal relationship between the breach of such duty and the injury to the plaintiff; and (4) the plaintiff has suffered damages.*

*Saukas, Bush, Idema & Mitus, P.A.* (by *Michael L. Idema*), for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Grant J. Gruel* and *Jeffrey H. Beusse*), for defendant.

Before: MACKENZIE, P.J., and R. M. MAHER and C. W. SIMON,* JJ.

R. M. MAHER, J. Plaintiffs appeal from a circuit court order granting defendant's motion for accelerated judgment, GCR 1963, 116.1(5).

According to the complaint, in July, 1971, plaintiff Wallace Bonney was afflicted with a condition of bone deterioration associated with certain dental treatments. To alleviate the condition, he was advised to take a drug called Lincocin manufactured by defendant. After taking considerable quantities of Lincocin, Mr. Bonney developed a variety of psychological and physical disorders which were eventually "crippling and disabling to his person". Mr. Bonney underwent a series of medical examinations to uncover the cause of his malady. Plaintiffs allege, however, that it was not until June 20, 1974, that they discovered the possibility that Lincocin was the source of Mr. Bonney's physical and psychological troubles. In January, 1975, plaintiffs read an article in a local newspaper stating that the federal Food and Drug Administration was concerned about the side effects of Lincocin. Plaintiffs recognized these side effects as the same disorders Mr. Bonney had experienced.

On February 25, 1975, Mr. Bonney and his wife initiated a lawsuit against defendant in federal district court. Subsequently, the defendant moved for summary judgment, arguing that plaintiffs had not complied with the statute of limitations. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

court denied the motion. See *Bonney v Upjohn Co,*
487 F Supp 486 (WD Mich, 1980). Apparently, the
court later vacated its order on the ground that it
lacked subject matter jurisdiction over the case.

Plaintiffs then brought their case in circuit court
on April 15, 1980, alleging that the defendant
negligently manufactured Lincocin and failed to
warn potential users of its harmful side effects.
The defendant then moved for accelerated judg-
ment, arguing again that the plaintiffs had not
complied with the statute of limitations. On Octo-
ber 2, 1981, the trial court granted the defendant's
motion.

On appeal, plaintiffs argue that the trial court
erred in ruling that they failed to commence their
products liability action before the running of the
period of limitations.

The applicable period of limitations is three
years.[1] The statute of limitations was tolled when

---

[1] Before 1978, the statute of limitations governing the plaintiffs'
action read as follows:

"The period of limitations is 3 years for all other actions to recover
damages for injuries to persons and property." MCL 600.5805(7); MSA
27A.5805(7).

This statute was amended, effective December 13, 1978, to read:

"The period of limitations is 3 years after the time of the death or
injury for all other actions to recover damages for the death of a
person, or for injury to a person or property." MCL 600.5805(8); MSA
27A.5805(8).

At the same time the following subsection was added. It reads in
pertinent part:

"The period of limitations is 3 years for a products liability action."
MCL 600.5805(9); MSA 27A.5805(9).

The law governing the length of the period of limitations is the law in
effect when the plaintiffs' cause of action accrued. The Revised Judica-
ture Act, which contains the above provisions, states:

"Except as specifically stated or reasonably inferred from the
provisions of this act, this act shall not impair or affect any act done,
offense committed or right accruing, accrued, or acquired, or liability,
penalty, forfeiture or punishment incurred prior to the time this act
takes effect, but the same may be enjoyed, asserted, enforced, prose-
cuted, or inflicted as if this act had not been passed." MCL
600.9905(1); MSA 27A.9905(1).

the plaintiffs filed their complaint in federal court. See *Ralph Shrader, Inc v Ecclestone Chemical Co, Inc,* 22 Mich App 213; 177 NW2d 241 (1970), *app dis* 385 Mich 789 (1971). We must decide, therefore, where the statutory period began to run.

The limitations period runs from the time the claim accrues. MCL 600.5827; MSA 27A.5827. Plaintiffs argue that their claim accrued when they discovered, or through the exercise of reasonable diligence should have discovered, the possibility that they had a cause of action. In other words, they urge us to apply their version of the "discovery rule" to a products liability action against a drug manufacturer. Defendant argues, however, that the plaintiffs' claim accrued when all the elements of their cause of action were in place whether or not the plaintiffs knew or should have known that they may have had a claim.

The trial court adopted the view of the defendant and ruled that the plaintiffs' claim accrued more than three years before they commenced their lawsuit in federal court. We believe, however, that the plaintiffs' position is correct and reverse.

Under Michigan's general accrual statute, MCL 600.5827; MSA 27A.5827, a "claim accrues at the time the wrong upon which the claim is based was

---

This Court has interpreted the above "saving clause" to state that a cause of action accruing before the effective date of the act is governed by the statute of limitations in effect on the date of accrual. *Quinlan v Gudes,* 2 Mich App 506; 140 NW2d 782 (1966). We believe the saving clause requires a similar result when it is applied to amendments to the RJA. Thus, a cause of action accruing before an amendment to the statute of limitations takes effect is governed by the statute of limitations in effect on the date of accrual.

In the present case, the plaintiffs' cause of action clearly accrued before December 13, 1978. The special products liability period of limitations provision is, therefore, not applicable to the plaintiffs' claim. Instead, MCL 600.5805(7); MSA 27A.5805(7), unamended, governs their claim. Under that provision the period of limitations is three years.

done regardless of the time when damage results". Michigan courts have expanded this provision to include the discovery rule as the method of defining when particular claims accrue. We must first ascertain the exact nature of the discovery rule as it has been formulated in Michigan. In some jurisdictions, the rule is that the claim accrues when the plaintiff discovers or should have discovered the injury. *Harig v Johns-Manville Products Corp,* 284 Md 70; 394 A2d 299 (1978); *Karjala v Johns-Manville Products Corp,* 523 F2d 155 (CA 8, 1975) (applying the law of Minnesota). Other jurisdictions define accrual as when the plaintiff knew or should have known that he was injured and that the defendant's product caused the injury. *Burd v New Jersey Telephone Co,* 76 NJ 284; 386 A2d 1310 (1978); *Raymond v Eli Lilly & Co,* 117 NJ 164; 371 A2d 170 (1977); *Roman v A H Robins Co, Inc,* 518 F2d 970 (CA 5, 1975) (applying the law of Texas). Finally, it has been held that the claim accrues when the plaintiff knows or should have known that he has a possible cause of action. See *Grigsby v Sterling Drug, Inc,* 428 F Supp 242 (DC, 1975), *aff'd* 177 US App DC 270; 543 F2d 417 (1976).

The formulation advanced by Michigan appellate courts falls into this last category. In *Johnson v Caldwell,* 371 Mich 368; 123 NW2d 785 (1963), the Supreme Court adopted the discovery rule for malpractice claims. As formulated by the Court the period of limitations does not begin to run until the plaintiff discovers or should have discovered "the wrongful act". 371 Mich 379. In *Dyke v Richard,* 390 Mich 739, 747; 213 NW2d 185 (1973), the Court said that a malpractice suit may be brought within two years after "the asserted malpractice" is discovered or should have been discov-

ered. The Court next extended the discovery rule to a cause of action for negligent misrepresentation by a title abstractor. *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974). This cause of action accrues, the Court said, when the plaintiff knows or should know of "the negligent misrepresentation". 391 Mich 25. Finally, the Court has extended the rule to a products liability case involving property damage. *Southgate Community School Dist v West Side Construction Co,* 399 Mich 72; 247 NW2d 884 (1976). The Court held that the claim accrues when the plaintiff discovers or should have discovered "the manufacturer's breach of warranty". 399 Mich 82 (footnote omitted).

These cases indicate that Michigan's discovery rule focuses on the plaintiff's awareness of the cause of action. By the time he discovers the "wrongful act", "malpractice", "negligent misrepresentation" or "breach of warranty", the plaintiff will have uncovered evidence as to each element of his cause of action. See *Williams v Polgar, supra,* p 25; *Bluemlein v Szepanski,* 101 Mich App 184, 190; 300 NW2d 493 (1980), *lv den* 411 Mich 995 (1981) (finding that *Southgate Community School Dist v West Side Construction Co, supra,* held that "[a] cause of action accrues in a case involving property damage at the time the plaintiff either discovers or reasonably should have discovered his cause of action"). We conclude that the discovery rule, as traditionally formulated by Michigan courts, is as follows: A plaintiff's cause of action accrues when he discovers or, through the exercise of reasonable diligence, should have discovered that he has a possible cause of action.

We have been unable to find any Michigan case deciding whether or not this discovery rule should

be applied to a products liability case against a drug manufacturer. Defendant argues, however, that this Court has refused to apply the discovery rule to other products liability cases involving personal injury. We do not agree with defendant's interpretation of these cases. In *Sedlak v Ford Motor Co,* 64 Mich App 61; 235 NW2d 63 (1975), the plaintiff, working under a truck, was injured when the tire jack supporting the vehicle collapsed. This Court held that the plaintiff's products liability claim against the jack's manufacturer accrued on the date of the injury, not when the plaintiff's attorney discovered the relation between the jack and the injury. The Court grounded its holding on the principle that the accrual date of a cause of action should not be postponed until the plaintiff discovers his claim with *professional assistance.* The Court found it sufficient that the "[p]laintiff knew on the date of his injury that the tire jack was involved". 64 Mich App 63. Thus, the *Sedlak* Court, far from rejecting the discovery rule as such, appeared to apply it.

In *Reiterman v Westinghouse, Inc,* 106 Mich App 698; 308 NW2d 612 (1981), the plaintiff's decedent suffered fatal injuries when he attempted to plug in a Westinghouse electric clothes dryer containing a component manufactured by General Electric. The Court held that the plaintiff's claim against G. E. for breach of warranty accrued at death rather than when plaintiff learned that G. E. manufactured the allegedly defective component. As in *Sedlak,* the *Reiterman* panel did not reject the discovery rule; rather, it found that at the time of death the rule was satisfied. The Court concluded that "[p]laintiff knew at the date of decedent's death that the faulty machine caused his injury", 106 Mich App 704, and further ruled

that "as a matter of law * * * where a product is the instrumentality of death the fact that the product may have been defective has been manifested". 106 Mich App 704-705.

In *Stoneman v Collier,* 94 Mich App 187; 288 NW2d 405 (1979), plaintiffs' decedent died of carbon monoxide asphyxia while a passenger in a General Motors car. The Court ruled that plaintiffs' claim against General Motors accrued at the time of decedent's death rather than when plaintiffs discovered the possibility of General Motors' liability. The Court did not reject the discovery rule; instead it found that at the date of death the plaintiffs "were aware that decedent * * * died of carbon monoxide poisoning in a General Motors automobile, and could have proceeded against General Motors accordingly". 94 Mich App 192-193.

In *Sedlak, Reiterman,* and *Stoneman* this Court rejected the plaintiffs' arguments that their lawsuits were timely under the discovery rule, but not because the Court held that the rule did not apply. Rather, the Court in each case assumed that the rule applied and then concluded that the limitations period had run between the date the plaintiff discovered or should have discovered his claim and the date the lawsuit was commenced. Thus, we decline to follow the defendant's interpretation of these cases as rejecting the discovery rule in a products liability case involving personal injury.

Defendant also draws our attention to *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972). In *Connelly, supra,* the Court said:

"In the case of an action for damages arising out of tortious injury to a person, the cause of action accrues when all of the elements of the cause of action have occurred and can be alleged in a proper complaint.

"Those elements are four in number.

"(1) The existence of a legal duty by defendant toward plaintiff.

"(2) The breach of such duty.

"(3) A proximate causal relationship between the breach of such duty and an injury to the plaintiff.

"(4) The plaintiff must have suffered damages." 388 Mich 150.

Defendant interprets the above language to assert that a cause of action for tortious personal injury accrues when all four elements are in place. The Supreme Court, however, has not construed *Connelly* in this fashion. Thus, in *Williams v Polgar*, *supra*, the Court wrote:

"[T]he statute of limitations does not begin running [on a claim against a title abstracter for negligent misrepresentation] until the point where plaintiff knows or should have known of this negligent misrepresentation. At that point, the four elements in *Connelly* * * * [have been] satisfied". 391 Mich 25.

Thus, the cause of action involved in *Williams* did not accrue until the four *Connelly* elements were in place *and* the plaintiff knew or should have known of the negligent misrepresentation. In *Parish v B F Goodrich Co*, 395 Mich 271; 235 NW2d 570 (1975), the Court needed to determine when a products liability claim for personal injury accrued in order to apply Michigan's "borrowing statute", MCL 600.5861(2); MSA 27A.5861(2), since amended by 1978 PA 542, § 1. The Court wrote that:

"[T]he product liability claim of a consumer for personal injury against a manufacturer, whether postulated on theories of tort or contract or an amalgam of both, *does not* accrue for purposes of the borrowing

statute *until* all elements of the cause of action are present." 395 Mich 284. (Emphasis supplied.)

The rule announced in *Parish* is that the claim *does not* accrue before the four *Connelly* elements are present. *Parish* eschewed saying that the claim accrues *when* the *Connelly* elements are in place.

The Supreme Court has avoided interpreting its decision in *Connelly* as setting forth the rule that a cause of action accrues when its elements are present. We, therefore, decline to interpret *Connelly* in that fashion.

The defendant also maintains that, as a matter of statutory construction, the discovery rule has been excluded from the accrual statute as it applies to a products liability cause of action. Defendant points out that the discovery rule was codified in the medical malpractice area in MCL 600.5838(2); MSA 27A.5838(2) and was not applied to a products liability claim when the Legislature later enacted a special limitations period for a products liability action. MCL 600.5805(9); MSA 27A.5805(9). Defendant concludes that, at the latter time, the Legislature intentionally omitted the discovery rule from a products liability action, citing the following rule of statutory construction:

"But if words used in a prior statute to express a certain meaning are omitted, it will be presumed that a change of meaning was intended." 2A Sands, Sutherland Statutory Construction (4th ed), § 51.02, p 291.

We do not agree.

We note initially that, assuming *arguendo* defendant's view of the legislative intent, the intentional exclusion of the discovery rule did not take effect until December 13, 1978, the effective date of the provision governing the period of limitations for a products liability action. But, as we explained

earlier in a footnote,[2] this case is governed by the law as it stood before that date. Thus, defendant's construction of that provision is inappropriate to the present case.

In any event, we must reject defendant's argument on its merits. Defendant's reliance on the agove-quoted rule of statutory construction is misplaced. The rule applies to a statute pertaining to the same or similar subject matter as a previously enacted statute. The rule dictates that, where the later statute employs language similar to the language used in the earlier statute, except for certain words, the Legislature may be presumed to have omitted those words intentionally from the statute.

In this case, defendant offers MCL 600.5805(9); MSA 27A.5805(9) as the later statute. It reads, in pertinent part:

"The period of limitations is 3 years for a products liability action."

Defendant offers MCL 600.5838(2); MSA 27A.5838(2) as the earlier statute. It provides in pertinent part:

"An action involving a claim based on malpractice may be commenced * * * within 6 months after the plaintiff discovers or should have discovered the existence of the claim".

Even a cursory examination of the wording of these two provisions reveals that the language of the later statute is very different from the language of the earlier. The Legislature's choice of language indicates that it did not have the language of the earlier statute in mind when it

---

[2] See fn 1 *supra*.

drafted the products liability provision. Rather, the language of the products liability provision follows the style used in the other subsections of that same statute.[3] The Legislature clearly had this wording in mind when it phrased MCL 600.5805(9); MSA 27A.5805(9). Thus, we cannot presume that the Legislature "omitted" the discovery rule language when it drafted the statute setting forth the period of limitations for a products liability action.

Our review of Michigan law convinces us that no authority precludes extending Michigan's discovery rule to a products liability claim against a drug manufacturer. Other jurisdictions, however, have addressed the issue. In deciding whether to take this step, we have found their decisions to be useful.

---

[3] The provision reads in full:

"(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

"(2) The period of limitations is 2 years for an action charging assault, battery, or false imprisonment.

"(3) The period of limitations is 2 years for an action charging malicious prosecution.

"(4) The period of limitations is 2 years for an action charging malpractice.

"(5) The period of limitations is 2 years for an action against a sheriff charging misconduct or neglect of office by the sheriff or the sheriff's deputies.

"(6) The period of limitations is 2 years after the expiration of the year for which a constable was elected for actions based on the constable's negligence or misconduct as constable.

"(7) The period of limitations is 1 year for an action charging libel or slander.

"(8) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

"(9) The period of limitations is 3 years for a products liability action. However, in the case of a product which has been in use for not less than 10 years, the plaintiff, in proving a prima facie case, shall be required to do so without benefit of any presumption." MCL 600.5805; MSA 27A.5805.

The vast majority of the courts have concluded that the discovery rule applies to a plaintiff's products liability claim against a drug manufacturer. See Anno: *Statute of limitations: running of statute of limitations on products liability claim against manufacturer as affected by plaintiff's lack of knowledge of defect allegedly causing personal injury or disease,* 91 ALR3d 991; Anno: *Statute of limitations: when cause of action arises on action against manufacturer or seller of product causing injury or death,* 4 ALR3d 821. But see *Thornton v Roosevelt Hospital,* 59 App Div 2d 680; 398 NYS2d 659 (1977), *aff'd* 47 NY2d 780; 417 NYS2d 920; 391 NE2d 1002 (1979); *Locke v Johns-Manville Corp,* 221 Va 951; 275 SE2d 900 (1981). A few examples will help to illustrate the majority view. In *Raymond v Eli Lilly, supra,* the plaintiff alleged that the defendant's oral contraceptive caused his wife's blindness. Suit was brought in state court seven years after plaintiff's wife was injured, one year after New Hampshire's statute of limitations period had run. The defendant removed the case to federal court and moved for summary judgment based on the statute of limitations. The federal district court denied the motion. See *Raymond v Eli Lilly & Co,* 412 F Supp 1392 (D NH, 1976), *aff'd* 556 F2d 628 (CA 1, 1977). Subsequently, the First Circuit Court of Appeals certified to the New Hampshire Supreme Court the question whether the period of limitations was tolled "until the time of the discovery of the cause of action in a case in which the plaintiff's injury was allegedly caused by a drug and the plaintiff, exercising reasonable diligence, did not learn of the possible causal connection between the drug and her injury until two or three years after the injury occurred". See *Raymond v Eli Lilly & Co,* 117 NH 167. The Supreme Court answered in the affirmative.

In *McKenna v Ortho Pharmaceutical Corp,* 622 F2d 657 (CA 3, 1980), *cert den* 449 US 976; 101 S Ct 387; 66 L Ed 2d 237 (1980), the plaintiff alleged that she suffered a stroke as a result of ingesting oral contraceptives manufactured by the defendant. The Court held that the period of limitations was tolled until the plaintiff knew or by the exercise of reasonable diligence should have discovered that the drug caused her injuries.

In *Frederick v Calbio Pharmaceuticals,* 89 Cal App 3d 49; 152 Cal Rptr 292 (1979), the plaintiff's decedent died as the alleged result of the administration of a drug manufactured by the defendant. The Court held that the period of limitations did not begin to run until the plaintiff knew or through the exercise of reasonable diligence should have discovered the cause of the injury.

Policy considerations also support adopting the discovery rule in a products liability case against a drug manufacturer. A statute of limitations is founded in public policies and public needs. *In re Straight's Estate,* 329 Mich 319; 45 NW2d 300 (1951). The policies behind a statute of limitations were articulated in *Bigelow v Walraven,* 392 Mich 566, 576; 221 NW2d 328 (1974):

> "Statutes of limitations are intended to 'compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend'; 'to relieve a court system from dealing with "stale" claims, where the facts in dispute occurred so long ago that evidence was either forgotten or manufactured'; and to protect 'potential defendants from protracted fear of litigation'." (Footnote omitted.)

Adopting the discovery rule in a products liability case against a drug manufacturer offends none of these policies. The rule would not protract

unfairly a potential defendant's fear of litigation. As the New Hampshire Supreme Court explained:

"With respect to their expectations of repose, drug companies are unique among most potential tortfeasors. The harmful propensities of drugs are often not fully known at the time the drugs are marketed. These companies know or at least should expect that some time may pass before the harmful effects of their products manifest themselves in drug users and that there may be another lapse of time before the injured person is able to discover the causal connection between his injury and the drug he consumed. * * * Given these unique circumstances and the fact that the scope of a drug manufacturer's liability is substantial and seems to expand continually through the growth of substantive tort and warranty doctrines, * * * we do not think the drug company can reasonably expect to be immune to suit before its customer has a fair opportunity to discover the company's tortious conduct. *Raymond v Eli Lilly & Co, supra,* 117 NH 173-174.

Nor would the discovery rule preserve stale claims:

"With respect to the problem of lost or inaccurate evidence due to the passage of time, several reasons exist why the potential for prejudice to the defendant is not significant in a drug case of this kind. Most of the evidence necessary to prove or defend against liability is likely to be documentary in nature. It is not the kind of evidence that is lost or becomes unreliable as time passes. Companies generally compile and maintain research records that document the extent of their knowledge of the harmful propensities of their drugs. Certainly, doctors and hospitals meticulously maintain and store records of patient treatments. [Citation omitted.] Additionally, unlike the situation in most cases, the passage of time in a drug case is likely to increase both the amount and the accuracy of the evidence—in this case the scientific community's knowledge of the causal relationship between certain drugs and injury or dis-

ease. Finally, we note that manufacturers are in a superior position to control the discovery of the hazards of their products. 'Through the processes of design, testing, inspection and collection of data on product safety performance in the field, the manufacturer has virtually exclusive access to much of the information necessary for effective control of dangers facing product consumers. Indeed, the strict principles of modern products liability law evolved in part to motivate manufacturers to use this information to help combat the massive problem of product accidents.' Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich L Rev 1258, 1258 (1976). We do not think that in suits such as the instant one 'the passage of time would increase problems of proof or entail the danger of false, fraudulent, frivolous, speculative or uncertain claims.' *Wigginton v Reichold Chemicals, Inc,* 133 Ill App 2d 776, 779; 274 NE2d 118, 120 (1971)." *Raymond v Eli Lilly & Co,* 117 NH 174-175.

For the same reasons, the discovery rule would allow the defendant a fair opportunity to defend the lawsuit. The evidence necessary to defend the case, being largely documentary, will still be available when the lawsuit is filed. Moreover, the passage of time may work to the defendant's advantage by producing research favorable to the defendant's case.

In addition to these considerations, we note that where the drug that forms the basis of the lawsuit was used to treat a medical condition, as in the present case, a products claim is similar to a medical malpractice case in a critical respect. In both cases, "it is sometimes difficult to distinguish the injury from symptoms of the conditions for which treatment is sought". *Stoneman v Collier, supra,* p 192. Just as this consideration supports adopting the discovery rule in a medical malpractice case, so, too, it supports adopting that rule in

a products liability case against a drug manufacturer.

For these reasons, we hold that the period of limitations does not begin to run in a products liability case against a drug manufacturer until the plaintiff discovers or through the exercise of reasonable diligence should have discovered that he had a possible cause of action.

When the plaintiffs discovered or should have discovered their cause of action is not a question for the court. Because plaintiffs demanded a jury trial, this question must be decided by the jury at trial, rather than by the court at the hearing on the motion for accelerated judgment. See *Leyson v Krause,* 92 Mich App 759; 285 NW2d 451 (1979).

Accordingly, we reverse the trial court's order granting defendant's motion for accelerated judgment and remand for proceedings consistent with this opinion.

Reversed and remanded. No costs, a significant public question being involved.

C. W. SIMON, J., concurred.


MACKENZIE, P.J. *(concurring in part and dissenting in part).* I agree with the majority that the limitations period applicable to this product liability case is three years under MCL 600.5805(7); MSA 27A.5805(7) as it existed prior to amendment in 1978. I also agree that, with respect to plaintiffs' negligence theory, the applicable statute governing when plaintiffs' cause of action accrued is MCL 600.5827; MSA 27A.5827. However, I respectfully dissent from the majority's conclusion that the discovery rule of accrual applies to plaintiffs' negligence theory. I would affirm the trial court.

In *Connelly v Paul Ruddy's Equipment Repair &*

*Service Co,* 388 Mich 146; 200 NW2d 70 (1972), which, like the present case, involved a products liability claim for personal injuries based on a negligence theory, the Court interpreted MCL 600.5827; MSA 27A.5827 as providing that a cause of action accrues not when the negligent act occurs but, rather, when the following four elements have occurred:

"(1) The existence of a legal duty by defendant toward plaintiff.

"(2) The breach of such duty.

"(3) A proximate causal relationship between the breach of such duty and an injury to the plaintiff.

"(4) The plaintiff must have suffered damages." *Connelly, supra,* p 150.

Thus, accrual occurs when the injury or damage is suffered; the Court in *Connelly* in no way indicated that a discovery rule must also be applied.

I recognize that our Supreme Court has applied the discovery rule in the contexts of negligent misrepresentation, *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974), and medical malpractice, *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973); *Johnson v Caldwell,* 371 Mich 368; 123 NW2d 785 (1963). The Supreme Court has also applied the discovery rule in products liability cases based on a breach of warranty theory under MCL 600.5833; MSA 27A.5833, which expressly provides that an action based on breach of warranty accrues when the breach is discovered or reasonably should be discovered. *Southgate Community School Dist v West Side Construction Co,* 399 Mich 72, 82; 247 NW2d 884 (1976); *Parish v B F Goodrich Co,* 395 Mich 271, 282; 235 NW2d 570 (1975). Also, this Court has applied the discovery rule in a case involving property damage due

to negligent workmanship. *Bluemlein v Szepanski,* 101 Mich App 184; 300 NW2d 493 (1980), *lv den* 411 Mich 995 (1981). However, none of the Michigan cases cited by the majority stand for the proposition that a discovery rule of accrual applies to a products liability action for personal injuries based on a negligence theory.

Nor do I agree with the majority's interpretation of *Sedlak v Ford Motor Co,* 64 Mich App 61; 235 NW2d 63 (1975), *Reiterman v Westinghouse, Inc,* 106 Mich App 698; 308 NW2d 612 (1981), and *Stoneman v Collier,* 94 Mich App 187; 288 NW2d 405 (1979), as decisions implicitly adopting the discovery rule for purposes of products liability cases based on a negligence theory.

Until the Legislature or our Supreme Court clearly indicates that the discovery rule of accrual is to be applied in products liability actions for personal injuries based on a negligence theory, I decline to do so. Given the present state of the law, I believe *Connelly, supra,* is the controlling case, and under it plaintiffs' cause of action based on their negligence theory accrued at the time Wallace Bonney's injuries occurred, not when plaintiffs discovered or reasonably should have discovered the alleged negligence of defendant. In addition, I reject plaintiffs' argument that due process requires application of the discovery rule of accrual. See *O'Brien v Hazelet & Erdal,* 410 Mich 1; 299 NW2d 336 (1980), *aff'g Oole v Oosting,* 82 Mich App 291; 266 NW2d 795 (1978).