*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VERNON BOWMAN, Individually and as
Personal Representative of the ESTATE OF
KELLY M BOWMAN,

Plaintiff-Appellee,

v

ST. JOHN HOSPITAL AND MEDICAL
CENTER and ASCENSION MEDICAL GROUP
MICHIGAN d/b/a ROMEO PLANK
DIAGNOSTIC CENTER,

Defendants-Appellants,

and

TUSHAR S PARIKH MD,

Defendant.

UNPUBLISHED
August 13, 2019

No. 341640
Macomb Circuit Court
LC No. 2017-002159-NH

VERNON BOWMAN, Individually and as
Personal Representative of the ESTATE OF
KELLY M BOWMAN,

Plaintiff-Appellee,

v

ST. JOHN HOSPITAL AND MEDICAL
CENTER and ASCENSION MEDICAL GROUP
MICHIGAN d/b/a ROMEO PLANK
DIAGNOSTIC CENTER,

Defendants,

No. 341663
Macomb Circuit Court
LC No. 2017-002159-NH

and

TUSHAR S PARIKH MD,

　　　　Defendant-Appellant.

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

RONAYNE KRAUSE, J. (*dissenting*).

I respectfully dissent. The trial court correctly apprehended the standard for applying the "discovery rule," MCL 600.5838a(2), as whether a reasonable person *should* have discovered the existence of a possible claim rather than whether a reasonable person *could* have discovered the existence of a possible claim. The majority misconstrues the case law that was in effect when the trial court entered its order, and the majority misreads this Court's recent case of *Hutchinson v Ingham Co Health Dep't*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 341249), which reaffirms the correct standard. I would affirm.

## I. BACKGROUND

As noted by the majority, the facts are simple. On June 12, 2013, defendant Tushar S. Parikh, M.D. (Dr. Parikh) interpreted as benign a mass on a mammogram of plaintiff Kelly Bowman's[1] right breast. According to plaintiff, the mass was, in fact, a cancerous lesion. Dr. Parikh informed Kelly that the findings were benign, so Kelly did not pursue any further investigation of the mass. As a consequence, a diagnosis of Kelly's cancer and the commencement of treatment did not occur until two years later. Kelly was diagnosed with invasive ductal carcinoma in April 2015. Plaintiff's complaint avers that Dr. Parikh misread[2] the 2013 mammogram, which she did not realize until she obtained a second medical opinion—not about her 2013 mammogram, but regarding her ongoing treatment plan in August 2016. Her second doctor, Dr. Dennis Citrin, reviewed her medical records in that context and informed Kelly that the 2013 mammogram "should have been interpreted as being positive or suspicious for cancer." Plaintiff filed her medical malpractice claims against Dr. Parikh and the Hospitals,[3] on June 6, 2017; her husband, Vernon Bowman, alleged a claim for loss of consortium. Kelly

---

[1] This matter was originally brought by Kelly Bowman. Kelly died during the pendency of this appeal, and her husband, Vernon Bowman as personal representative of Kelly's estate, was substituted in her place.

[2] As the majority notes, whether Dr. Parikh actually *did* misread the mammogram, and whether it would constitute malpractice if he did, are issues for the trier of fact. I neither draw nor express any personal opinions on the matter. I merely presume, with no further consideration, that Dr. Parikh committed malpractice, looking at the evidence in the light most favorable to the non-moving party, as I must when reviewing a motion brought under MCR 2.116(C)(7).

[3] The Hospitals' alleged liability is vicarious.

died as a consequence of her initially undiagnosed breast cancer on March 11, 2018, and Vernon, as personal representative of Kelly's estate, was substituted in her place.

Defendants argue that plaintiffs' claim accrued on June 12, 2013, when the 2013 mammogram was performed, so the two-year limitations period expired on the two-year anniversary of the mammogram at issue in this case, which was June 12, 2015. Defendants contend that plaintiffs may not rely on the six-month limitations period provided by the discovery rule, because Kelly's breast cancer was diagnosed no later than either April 30, 2015, or May 28, 2015.[4] Consequently, defendants conclude that plaintiffs' claims were time-barred at least a year before plaintiffs sent a NOI on December 10, 2016, and filed their complaint on June 12, 2017. Plaintiffs contend that, standing alone, the cancer diagnosis was not enough to put Kelly on notice of the malpractice. Rather, the discovery rule was triggered by the second medical opinion rendered in August 2016 by Dr. Citrin, who advised Kelly that the 2013 mammogram had been misread. Both parties' arithmetic is correct. If the discovery rule was not triggered until Dr. Citrin advised Kelly of the 2013 misreading of the mammogram, plaintiffs' NOI and complaint would have been timely. However, if the discovery rule was triggered in April or May of 2015, plaintiffs' NOI and complaint would have been untimely.

The trial court denied defendants' motions for summary disposition, relying on a decision from this Court, *Jendrusina v Mishra*, 316 Mich App 621; 892 NW2d 423 (2016), for the proposition that the critical inquiry was whether plaintiffs *should* have discovered the existence of their claim rather than whether plaintiffs *could* have done so. The trial court found:

> that it is likely that a reasonable person *could* have understood that a definitive finding of cancer in Kelly's right breast in 2015 meant that Dr. Parikh had misread the mammogram of Kelly's right breast in 2013. Here, Kelly was aware of a mass in her right breast in June of 2013, and before her 2015 cancer diagnosis in the same breast, she complained to her doctors that the mass had increased in size, leading to the 2015 mammogram. . . . But the Court cannot conclude that a reasonable person *should* have discovered the existence of a claim against Dr. Parikh solely on the basis of a subsequent cancer diagnosis. There is no evidence before the Court that any of Kelly's treating physicians told her that her 2013 mammogram was suspicious for cancer until August of 2016, or that a 2015 cancer diagnosis should put a reasonable person on notice that a benign mammogram from 2013 was necessarily the result of a negligent misinterpretation.

The trial court therefore held that plaintiffs' NOI and complaint were timely. Dr. Parikh and the Hospitals each filed applications for leave to appeal, which this Court granted and consolidated. This appeal followed.

## II. STANDARD OF REVIEW

---

[4] Defendants disagree as to which date is proper, but the effect of either date is the same.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(7), where the claim is allegedly barred, the trial court must accept as true the contents of the complaint, unless they are contradicted by documentary evidence submitted by the moving party. *Id*. at 119. The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). If the facts are undisputed, "whether a plaintiff's action is barred by the statute of limitations is a question of law, to be determined by the trial judge." *Moll v Abbot Laboratories*, 444 Mich 1, 29; 506 NW2d 816 (1993). Likewise, if the facts are undisputed, "when the plaintiff should have discovered her claim is a question of law." *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 216; 561 NW2d 843 (1997).

### III. APPLICABLE LAW

There is no dispute in this matter that plaintiffs' claims would be untimely unless saved by application of the "discovery rule" codified in MCL 600.5838a(2). That statute provides, in its entirety:

> Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. However, except as otherwise provided in section 5851(7) or (8), the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition, or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff. A medical malpractice action that is not commenced within the time prescribed by this subsection is barred. This subsection does not apply, and the plaintiff is subject to the period of limitations set forth in subsection (3), under 1 of the following circumstances:
>
> (a) If discovery of the existence of the claim was prevented by the fraudulent conduct of the health care professional against whom the claim is made or a named employee or agent of the health professional against whom the claim is made, or of the health facility against whom the claim is made or a named employee or agent of a health facility against whom the claim is made.
>
> (b) There has been permanent loss of or damage to a reproductive organ resulting in the inability to procreate.

The operative provisions relevant to the instant matter state that "an action involving a claim based on medical malpractice may be commenced . . . within 6 months after the plaintiff discovers or should have discovered the existence of the claim."

Under the discovery rule, " '[a] plaintiff's cause of action accrues when he discovers or, through the exercise of reasonable diligence, should have discovered that he has a *possible* cause of action.' " *Moll*, 444 Mich at 20, quoting and adopting in part *Bonney v Upjohn Co*, 129 Mich App 18, 24; 342 NW2d 551 (1983) (emphasis added by the *Moll* Court). Thus, "under the discovery rule, the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Moll*, 444 Mich at 29. This is an objective standard, and it does not require full knowledge of the entirety of the harm suffered. *Solowy*, 454 Mich at 223-224. Nonetheless, a plaintiff must "possess at least some minimum level of information that, when viewed in its totality, suggests a nexus between the injury and the negligent act." *Id*. at 226. The objective, reasonable-person standard is applied from the perspective of laypersons, not experts. *Jendrusina*, 316 Mich App at 632-635.

While this case was pending (indeed, only slightly more than a month after oral argument was held), this Court decided *Hutchinson v Ingham Co Health Dep't*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341249). *Hutchinson* features some similarities to the instant case. In particular, the plaintiff also alleged malpractice based on a failure to earlier diagnose breast cancer. In *Hutchinson*, this Court reiterated that any triggering of the discovery rule must be based on the reasonable perceptions and understanding of a layperson, not a medical or legal expert. *Hutchinson*, ___ Mich App at ___ (slip op at p 17). Due diligence does not obligate a plaintiff to undertake heroic efforts, and it permits a plaintiff to rely on and trust assurances made by medical professionals. *Id*. at ___ (slip op at pp 16-17). This Court reaffirmed that a plaintiff is not put on notice of a potential claim merely because the results of a recent diagnostic test differ from the reported results of a prior diagnostic test. *Id*. at ___ (slip op at pp 14-15). Patients need not immediately assume malpractice and deceit by a prior professional whenever a new diagnosis is made on the basis of a repeated diagnostic test, even if the patient has some subjective suspicions. *Id*. at ___ (slip op at pp 14-17).

IV. APPLICATION

As with the instant case, *Hutchinson* involved a plaintiff's malpractice claim against a health professional who had previously misread a mammogram as benign. This Court concluded that, under the circumstances of that case, the plaintiff had been put on notice of her potential cause of action when she received a definitive cancer diagnosis. *Hutchinson*, ___ Mich App at ___ (slip op at pp 17-18). However, that conclusion has no bearing on the instant matter. First, *Hutchinson* flatly rejected the contention that a diagnosis, standing alone, was *per se* notice that a prior benign finding might have constituted malpractice. Rather, any such new diagnosis must be considered *along with the totality of the other circumstances*. Secondly, the plaintiff in *Hutchinson* was explicitly told by her doctors, *contemporaneously with the definitive diagnosis*, that her earlier mammogram had been mishandled. *Id*. at ___ (slip op at pp 7-8). Therefore, one of the circumstances attendant to the definitive diagnosis was an express statement that the defendants might have committed malpractice. Finally, none of the parties in *Hutchinson* apparently disputed whether the plaintiff was on notice by the time of the definitive diagnosis, but only whether the plaintiff had been put on notice earlier. Consequently, the possibility that the plaintiff's definitive diagnosis might *not* have been sufficient under the totality of the circumstances was, on the face of the opinion, apparently never considered or analyzed. No such

presumption is applicable here, and the circumstances of plaintiff's diagnosis here clearly differ radically from the circumstances of the plaintiff's diagnosis in *Hutchinson*.

Similarly, *Jendrusina* explored a number of relevant distinctions between the situation in that case and the situation that had been presented in *Solowy*. In *Jendrusina*, this Court noted that a diagnosis or test result could not trigger the discovery rule if the diagnosis or result were never communicated to the plaintiff. *Jendrusina*, 316 Mich App at 627-628. The *Jendrusina* Court observed that the plaintiff in *Solowy* had actually known that she had a possible cause of action when she was *told by a doctor* that she might have a recurrence of cancer. *Id*. at 629. As the majority notes, the plaintiff in *Jendrusina*, unlike plaintiff in this case, was completely unaware of any health concerns relevant to his eventual malpractice claim. *Id*. at 630-633. However, *Jendrusina* did not hold that an absolute level of unawareness is the requisite standard. Furthermore, *Jendrusina* emphasized that patients were not expected to draw the same diagnostic conclusions as medical specialists. *Id*. at 631-633. Furthermore, unlike the plaintiff in *Solowy*, plaintiff's cancer diagnosis here was not a recurrence of symptoms that might suggest the recurrence of the same underlying cause. See *id*. at 631-633. Arguably, plaintiff here had somewhat less reason to be surprised than the plaintiff in *Jendrusina*, but nevertheless, plaintiff is not an oncologist[5] and not expected to be her own doctor. See *id*. at 633-634.

As *Jendrusina* held, a new or worsened diagnosis *could* lead a reasonable person to suspect the possibility of prior malpractice, but is insufficient to establish that a reasonable person *should* have discovered any such malpractice. *Id*. at 634-635. To hold otherwise "would not merely be inconsistent with the text of the statute, but it would also be highly disruptive to the doctor-patient relationship for courts to advise patients that they 'should' consider every new diagnosis as evidence of possible malpractice until proven otherwise." *Id*. at 635. I believe the majority extrapolates too much from the fact that plaintiff's diagnosis here was changed, rather than wholly novel. *Jendrusina* unambiguously held that a changed diagnosis is not grounds for suspecting a prior act of malpractice, and to hold otherwise would inevitably transform the doctor-patient relationship into an adversarial one.

Defendants dedicate considerable effort to the argument that this Court's opinion in *Jendrusina* is wrong and—by at least strong implication—should not be followed. This argument has clearly been rejected by *Hutchinson*. Even if *Hutchinson* did not exist, *Jendrusina* is a published case of this Court, issued after November 1, 1990, that has not been reversed or modified by our Supreme Court[6] or by a conflict panel of this Court. See MCR 7.215(J)(1). Furthermore, *Jendrusina* does not conflict with *Moll* or *Solowy*. *Moll* and *Solowy* addressed what a plaintiff must become aware of: "a possible cause of action" rather than "a probable cause of action." In *Jendrusina*, this Court addressed the standard for imputing awareness in the first place: specifically, "should" rather than "could." *Jendrusina* used the same word chosen by the Legislature in the statute, and it observed that "should" dictates the standard for evaluating a

---

[5] Nor are we.

[6] Our Supreme Court denied leave to appeal in *Jendrusina*, 501 Mich 958; 905 NW2d 231 (2018), and denied reconsideration of its denial of leave, 501 Mich 1027; 908 NW2d 306 (2018).

plaintiff's constructive awareness of "a possible cause of action." Additionally, this Court applied the reasonable-person standard properly: medical knowledge has long been held the almost exclusive provenance of experts rather than ordinary laypersons. See, e.g., *Woodard v Custer*, 473 Mich 1, 6; 702 NW2d 522 (2005).

Put more simply, *Jendrusina* is binding and was correctly understood by the trial court. The limitations period provided by the discovery rule begins running when an ordinary layperson *should* have linked some knowledge actually in his or her possession to the *possibility* of a cause of action. As *Solowy* cautioned, "the 'possible cause of action' standard is not an 'anything is possible' standard." *Solowy*, 454 Mich at 226. Thus, the inquiry is whether an ordinary person should have become aware of a possibility. Defendants' formulation would, erroneously, be whether an ordinary person *could* have become so aware. The majority accepts this formulation, despite the fact that every case we agree is binding rejects it. The trial court properly observed that the statute and *Jendrusina* required the discovery itself to be more than a mere possibility. *Hutchinson* reaffirms that principle.[7]

Defendants argue that Kelly should have been aware of a possible cause of action in 2015 when she was diagnosed with cancer. Defendants emphasize that the diagnosis was not made in a vacuum, and it should be considered in the context of her other knowledge: that the lump had existed for considerable time, that the lump had grown in size, that Kelly's concern regarding the lump was why the 2013 mammogram had been performed in the first place, and it "is common knowledge that cancer does not metastasize overnight." It is, however, equally common knowledge that not all breast lumps are cancerous even if they are uncomfortable or painful, that lumps may change over time yet remain benign, and that some initially-benign masses can *become* cancerous. It is also common knowledge that some cancers can grow significantly faster than other cancers. As the *Hutchinson* Court observed, an adverse diagnosis on a test performed today does not automatically imply malpractice in reporting a benign diagnosis on the same test performed several years previously. *Hutchinson*, ___ Mich App at ___ (slip op at pp 14-15, 17-18). Furthermore, patients are entitled to trust medical professionals. *Id*. at ___ (slip op at pp 16-17). We are not oncologists, and neither was Kelly.

I conclude that the trial court's analysis was entirely correct. Kelly *could* have become aware of a possible cause of action against defendants when she received her cancer diagnosis. However, no facts have been presented warranting an immediate assumption that, instead of receiving a new diagnosis, she had previously been misdiagnosed. In contrast, the plaintiff in *Hutchinson* was explicitly advised of possible earlier malpractice contemporaneously with her diagnosis.

The majority's analysis creates a sad consequence apart from the tragedy of Kelly Bowman's death. Patients frequently seek consultation with physicians because they fear that a condition (a breast lump, a swollen gland, a mole) might harbor cancer. Most breast lumps are

---

[7] I respectfully disagree with the majority's apprehension that I "seek to conflate the terms 'discovers' with 'should have discovered.' " To the contrary, it appears to me that the majority seeks to conflate "should have discovered" with "could have discovered."

not cancerous, and nor are most swollen glands, or most moles. The majority nevertheless places on every patient who receives a cancer diagnosis an obligation to immediately go back in time by launching an investigation into the accuracy of all previous diagnostic testing. Those who fail to undertake this mission within six months of diagnosis have no legal recourse if they later learn that a physician's negligence condemned them to death.

Perhaps in some cases, a fact surrounding the earlier diagnostic inquiry will have triggered a reasonable basis for a suspicion of malpractice. That was the case in *Solowy*, where the plaintiff herself articulated that the cancer symptoms "started all over again." *Solowy*, 454 Mich at 217. That fact sufficed to put the plaintiff on notice that the cancer *had* recurred, despite her previous physicians' assurance that she was cured. Here, however, the majority identifies no fact that should have put Kelly on notice that the mammogram was misread. The majority articulates no reason why Kelly should have assumed, contrary to the facts that breast lumps are common, usually benign, and usually requiring no further treatment, and contrary to the assurances of a trusted medical professional, that her breast lump was not benign in 2013. The majority likewise identifies nothing about her first 2015 diagnosis that should have immediately informed an ordinary person that she did not have a benign lump in 2013. Absent extraordinary circumstances or a proper motion, we are limited to considering only the record provided to us. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002); *Hallman v Holy Cross Hosp of Detroit*, 475 Mich 874, 874; 713 NW2d 779 (2006). If such facts exist, they are not found in this record.

I reject as unacceptable and legally groundless the notion that every cancer patient must assume prior negligence or lose their right to sue, even when no reason exists to suspect an error. The Legislature did not intend such a rule when it used the term "should have discovered." *Solowy*, *Jendrusina* and *Hutchinson* understood that the term "should have discovered" is not to be applied in a vacuum, but only when a plaintiff has notice of some sort that her condition should have been discovered earlier. There was no such notice or awareness here.

The trial court correctly determined that the limitations period provided by the discovery rule began running in August of 2016 when Kelly was specifically advised that Dr. Parikh's interpretation of the 2013 mammogram was a misdiagnosis rather than an accurate diagnosis of Kelly's condition at the time. The trial court therefore correctly denied defendants' motions for summary disposition pursuant to MCR 2.116(C)(7).

I would affirm.

/s/ Amy Ronayne Krause